OLINGER MORTUARY ASSOCIATION, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE IMPERIAL INVESTMENT COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29291, 36502. Promulgated August 5, 1931.

*Walter E. Schwed, Esq.,* and *Richard M. Crane, C. P. A.,* for the petitioners.

*J. E. McFarland, Esq.,* for the respondent.

**OPINION.**

BLACK: Both petitioners allege that respondent erred in overstating net income, due to the disallowance of commission expense in the amount of $33,047.59. The facts developed at the hearing show that the above amount claimed by petitioners as a deduction on their consolidated income-tax return, plus certain minor adjustments not in dispute, make up a total of $35,750 and consists of

$8,250 credited to Frank W. Farmer by the Imperial Investment Company on its books, $15,000 which the Imperial Investment Company paid Ben Grimes in 1924, and $12,500 which was paid to the Collbran-Bostwick Development Company in 1924.

Petitioners treat all three of these expenditures as part of the expense in procuring the release of the loan and collateral previously deposited with the Collbran-Bostwick Development Company and lump them together and take all as an expense deduction in 1924. Respondent disallows this and treats all these items as expenses connected with petitioners' procuring the $180,000 loan from the American National Bank in October, 1924, and amortizable over the life of such loan. Respondent has prorated this amount on a three-year basis and has apportioned $2,702.40 of such expense to cover the period October 10, 1924, to December 31, 1924. This is the period of time included in the taxable year before us, during which time the loan of $180,000 was in force.

We do not agree with petitioners' treatment of these deductions nor do we agree with respondent's treatment of them. The $8,250 payment made to Frank W. Farmer is not, in our judgment, a proper expense item. He had contracted to purchase a three-tenths interest in the Olinger Mortuary Association and to pay for same on the installment plan. He was complaining about the $12,500 which was being paid to Collbran-Bostwick Investment Company for cancellation of its contract and return of collateral and, in order to satisfy him and secure his acquiescence in the transaction, the Imperial Investment Company agreed to and did credit him with $8,250 on its books in part payment of the stock which he had contracted to purchase. We know of no provision of the applicable revenue act and we are cited to none which will permit a corporation to deduct as ordinary and necessary business expenses, in determining its net income for the taxable year, amounts which it has paid to a disgruntled minority stockholder to secure his acquiescence in business transactions which he does not approve.

This item of $8,250 paid to Farmer is not an allowable deduction for any year and respondent should not so treat it in redetermining the deficiency. *Forty-four Cigar Co.*, 2 B. T. A. 1156.

The next item for our consideration is the payment of $15,000 to Grimes in 1924 under the circumstances and for the considerations which we have already detailed in our findings of fact. We think this was a capital transaction and therefore not an allowable deduction.

Undoubtedly where an individual or a corporation taxpayer makes expenditures for the purpose of getting some one to guarantee the payment of taxpayer's bonds or other evidence of indebtedness, the sum of such expenditures is a proper part of the cost of procuring

the money which the indebtedness represents and is amortizable over the life of the loan. *Liberty Farms Co.*, 22 B. T. A. 1298.

So if when Bona secured the agreement of Grimes to guarantee the payment of his note to the American National Bank for $25,000, he had agreed to pay Grimes a certain sum of money, say $5,000, for such guaranty, this amount would have been a part of Bona's cost in procuring the $25,000 and would have been amortizable over the period of the loan, but he did not do it that way. What Bona agreed to pay Grimes in consideration of his guaranteeing to pay said note at maturity was 15 per cent of the profits of the Olinger Mortuary Association, after said $25,000 should be paid. In other words, Grimes became the beneficial owner of 15 per cent of the profits coming to Bona from the Olinger Mortuary Association. If no profits were made, Grimes got nothing. This agreement was made in 1921 and certainly Bona could not have accrued anything as a liability on his books by reason of his contract with Grimes. It was entirely uncertain whether Grimes would ever receive anything. He would receive anything only if and when the $25,000 note was paid to the American National Bank and if and when thereafter the Olinger Mortuary Company made profits, and then to the extent of 15 per cent of such profits. Under such a situation no liability could be accrued on account of the contract. *S. Naitove & Co.* v. *Commissioner*, 32 Fed. (2d) 949.

In 1924, when the Imperial Investment Company, succeeding to the rights and assuming the liabilities of Bona, paid Grimes $15,000 for the purchase and abrogation of the contract, it was a capital transaction and we fail to see where it has any proximate connection either as a part of the cost of paying off the Collbran-Bostwick Development Company loan or as a part of the cost of the $180,000 loan secured from the American National Bank in October, 1924.

This payment of $15,000 to Grimes should not be allowed as a deduction in determining the deficiency.

We come last to a discussion of the $12,500 payment which petitioner, the Imperial Investment Company, made to Collbran-Bostwick Development Company in the taxable year in order to get it to allow the payment to it of the balance on an indebtedness not yet due and thereby stop the payment to Collbran of $250 monthly salary which he was receiving from the Olinger Mortuary Association and for which he was performing no services and secure the release of the stock of the Olinger Mortuary Association which was being held as collateral to secure the loan.

Petitioners, the Imperial Investment Company and Olinger Mortuary Association, at that time were being held to a very burdensome and restrictive contract which was entered into in 1921 with George W. Olinger, Inc., and George W. Olinger as an individual.

Some of the terms of that contract have been set out in our findings of fact. Petitioners wanted to be released from it and found that they could get released from all these burdensome restrictions by borrowing $180,000 from the American National Bank and using the money to pay all the amounts due under the several contracts.

But in order to get the money, the American National Bank required that petitioners deposit with it as collateral security all the stock of the Olinger Mortuary Association, except the three qualifying shares. This was already up as collateral, as we have stated, with the Collbran-Bostwick Development Company and in order to get it back petitioners paid the Collbran-Bostwick Development Company $12,500 for that purpose and the other purposes which we have already enumerated.

In *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, we held that upon the cancellation of a lease the owner of the fee merely acquires possession and does not acquire any new estate or asset which is exhaustible, and hence a payment made by him to secure cancellation of the lease and possession of the premises for use in his business is deductible as a business expense in the year of payment and may not be amortized over the unexpired term of the lease. In the instant case, petitioner, the Imperial Investment Company, was the owner of the stock of the Olinger Mortuary Association put up as collateral security with the Collbran-Bostwick Development Company for a loan. In October, 1924, it needed this stock badly for use in its business and paid the Collbran-Bostwick Development Company $12,500 for the consideration, among other things, of securing possession of this stock.

We think under the authority of *Higginbotham-Bailey-Logan Co.*, *supra*, petitioner is entitled to deduct said amount as an ordinary and necessary business expense incurred and paid in 1924 and does not have to amortize it over the period of the new loan negotiated with the American National Bank, as contended by respondent. Respondent is overruled respecting his contention as to this item.

*Decision will be entered under Rule 50.*