Boulevard Frocks, Inc. v. Commissioner.
Boulevard Frocks, Inc. v. Commissioner
Docket No. 106313.
United States Tax Court
1943 Tax Ct. Memo LEXIS 528; 1 T.C.M. (CCH) 358; T.C.M. (RIA) 43007; January 2, 1943
*528 In July 1937 petitioner entered into a contract with former stockholders by which it agreed to pay each of them $12,000 in 60 equal monthly installments in consideration of the termination and cancellation of an unlimited and burdensome employment contract which was harmful to the business. The July 1937 contract also provided for the continuation of an employment arrangement of the stockholders for five years, services to be rendered if requested, and the payment of $100 per month to each as compensation. Petitioner kept its books and made its income tax and excess profits return on the accrual basis. Held, that petitioner is entitled to deduct as ordinary and necessary business expenses, such monthly installments of the $12,000 liability as fell within its fiscal year ending October 31, 1937, and also held that petitioner is not entitled to deduct the monthly "compensation" payments because no services were rendered by its former stockholders to petitioner within its fiscal year. Harry L. Altman, C.P.A., 1204 Foshay Tower, Minneapolis, Minn., and George B. Leonard, Esq., for the petitioner. Gerald W. Brooks, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion
*529 The respondent determined a deficiency of $2,531.47 in the petitioner's income tax for its taxable year ending October 31, 1937. The sole issue is the respondent's disallowance, as an ordinary and necessary business expense, of $31,473.40, representing the discounted value of the petitioner's obligation to pay $36,000 to two former stockholders under a so-called employment contract. Findings of Fact The petitioner is a corporation organized under the laws of Minnesota and has its principal office in Minneapolis. It filed its income and excess profits tax return for the period involved with the Collector of Internal Revenue for the District of Minnesota. It was engaged in the manufacture and sale of ladies' garments. The petitioner kept its books and made its income tax returns on the accrual basis. Prior to October 1928 the petitioner's only stockholders, Moritz Lazarus, Nathan A. Fine, and Adolph Schein, owned each 167 shares of its common stock. In that month Robert S. Scheider purchased 167 shares of such stolk Over $350,000 worth of business was done by the corporation in 1928. On December 26, 1928, the petitioner entered into written employment contracts with each stockholder, *530 for a term of one year, at $100 per week, with the option, granted to the employee, to extend the term from year to year, provided the company should not be liquidated or sold and the employee should not dispose of any of his stock in the petitioner. Lazarus was the factory superintendent, Fine had charge of the cutting room, Schein was the buyer and sales manager, and Schneider was the credit and office manager. After Schneider joined the enterprise its volume of business increased to over $1,000,000 in 1937. For two or three years prior to 1937, Lazarus became interested in patents and other private ventures and neglected his duties as an employee and official of the petitioner. He borrowed money indiscriminately, charged personal purchases to the petitioner, cashed worthless checks with the petitioner's cashier, was absent from his work, and otherwise demoralized the petitioner's business: Fine was ill and became very irritable. The death of his daughter affected him seriously. The burden of the increased business was too heavy for him. He neglected his work and became useless to the petitioner. Schneider and Schein discussed the situation with the petitioner's attorney, Amos *531 L. Deinard. Deinard attempted to adjust the differences between the two younger men and the older stockholders but with no success. Finally, in the spring of 1937, Schein decided to withdraw from the company. At that time he was 44 years of age, Schneider was 41, Lazarus was 57, and Fine was 58. Schein called the three stockholders together and asked them to buy him out. Lazarus and Fine said they "would look into the matter" but took no definite action. Schneider felt he could not continue his work for the company if Schein left. Lazarus and Fine suggested that the business itself be sold. Deinard attempted to sell but failed. Lazarus and Fine were considering the purchase of the other stockholders' holdings and requested an offer from them in writing. Thereupon, on June 28, 1937, Schein and Schneider offered to sell their stock, which at that time totalled 634 shares (the original stock was increased by stock dividends and purchases), for $100,000. Upon acceptance of the offer they agreed to resign as officers and directors of the company and to discontinue their employment by the petitioner. Lazarus and Fine did not accept the offer but proceeded to employ their own attorney, *532 Samuel H. Maslon. Shortly after July 3, 1937, Maslon countered with an offer from Lazarus and Fine to sell their own stock, which likewise amounted to 634 shares, to Schein and Schneider and also an offer to pay them an adequate price for the cancellation of their employment contracts of December 26, 1928. After two proposed written offers were tendered and rejected, Lazarus and Fine submitted, on July 16, 1937, a written offer which was accepted by Schein and Schneider. That offer provided for the sale of 634 shares of the petitioner's common stock for $44,000 in cash and 600 shares of five per cent nonvoting preferred stock of the petitioner, par value $100 per share. The following condition was set forth: The acceptance of this offer and the consummation of the sale provided for herein, are expressly conditioned upon appropriate corporate action being taken, and your individual compliance with the following, to-wit: (1) The issuance of six hundred (600) shares (and no more) of 5% preferred stock of the aforesaid corporation, of the par value of $100.00 per share, containing the provisions and conditions herein noted. Dividends at the specified rate to be payable monthly and fully *533 cumulative from date of issue. The corporation will not issue any additional preference stock of any character; and will retire the preferred stock issued to the undersigned, at par, at the rate of not less than $1,000.00 per month from and after the date of issuance thereof. Preferred stock retired pursuant hereto will be cancelled and not reissued. As long as any of the preferred stock is outstanding, the corporation will maintain a ratio of current assets to current liabilities of at least 1 1/2 to 1, and in addition thereto will maintain a surplus of current assets over current liabilities in an amount at least equal to $72,000.00 during the first two years following the date of issuance of said preferred shares, and at least equal to $36,000.00 during the three-year period thereafter. (2) The existing employment contracts between the undersigned and the corporation will be surrendered. In consideration therefor the corporation will enter into new employment contracts with each of the undersigned. by the terms of which it will agree to pay to each of the undersigned the sum of $300.00 a month for a period of five years from and after the date of the consummation of the sale. *534 Said payments will be made in consideration of the right reserved by the corporation to call upon the undersigned, jointly or severally, at such times as will not interfere with their regular occupations, for counsel and advice from time to time during that period. There shall be no obligation on the part of either of the undersigned to devote any specific amount of time to the affairs of the corporation, or incur any expense in its behalf, nor shall the death or disability of either or both of the undersigned relieve the corporation from its obligation to make such payments for the full term of five years. If the corporation shall fall or neglect to make the payments provided for in this paragraph, or any of them, as and when the same are payable hereunder, and such default shall continue for a period of 45 days, then, and in such event, at the option of the undersigned, or either of them, the full amount remaining unpaid under said agreements to the end of the term thereof, may be declared due and payable. Further conditions were imposed relating to the declaration of dividends, the issuance of monthly financial statements, and the prohibition against the sale of assets. Thereupon, *535 at stockholder's meetings held on July 19, July 21, and July 24, 1937, the petitioner amended its Articles of Incorporation to authorize the issuance of preferred stock and took appropriate action to accord with the agreement of July 16, 1937. At the meeting held on July 24, 1937, drafts of the contracts between the petitioner and Lazarus and Fine, relating to the termination of their employment agreements of December 26, 1928, and the substitute agreements embodying new terms and conditions of employment, were approved and the execution of the contracts authorized. At the inception of the negotiations with Lazarus and Fine looking toward the purchase of their stock, Schein and Schneider planned to use their own funds to supply the $44,000 cash payment and took steps to raise that amount. However, Schein and Schneider decided to transfer the 634 shares of the petitioner's stock to be acquired from Lazarus and Fine to the petitioner in exchange for $44,000 in cash and $60,000 in its preferred stock. Appropriate corporate action was taken to conform to such change of plans. Lazarus and Fine were designated as the nominees of Schein and Schneider to receive the preferred stock. Schein *536 and Schneider then transferred the $44,000 in cash to attorneys for distribution to Lazarus and Fine. The sale of the stock was consummated on July 26, 1937. The so-called employment contracts between the petitioner and Lazarus and Fine, dated July 26, 1937, contained the following preamble and provisions: WHEREAS, on the 26th day of December, 1928, the parties hereto entered into a contract for the employment of second party by first party, and WHEREAS, it is the desire of the parties to terminate the same upon the terms and conditions hereinafter provided, NOW THEREFORE, in consideration of the premises herein contained, said parties hereby agree with each other as follows, to-wit: 1. The said agreement of December 26, 1928 shall be, and the same is, hereby terminated and wholly annulled as of this date. 2. In consideration of the foregoing termination and annulment of said earlier agreement first party shall pay to second party the sum of $12,000 in installments following, to-wit: $200 on August 25, 1937, and $200 on the 25th days of the 59 successive months thereafter. 3. For the period of five years next following this date, and no longer, second party shall continue *537 in the employ of first party on the following terms and conditions only: (a) He shall be subject to call for counsel and advice from time to time throughout said period, but only when such calls will not interfere with any other occupation in which he may be engaged. (b) Second party shall be under no obligation to devote any set amount of time to the affairs of first party or incur any expense in its behalf. (c) In addition to the payment of $200 per month to be made in accordance with Article 2 hereof, first party shall, on the 25th day of each of the 60 consecutive months commencing August 25, 1937, pay to second party the sum of $100 per month compensation. (d) Further, neither the death nor disability of second party shall relieve first party from its obligation to make the payments specified in Article 2 and in subdivision (c) of Article 3 hereof, for the full five-year term of this agreement. No services were rendered by Lazarus and Fine and no calls for their services were made by the petitioner after July 16, 1937. Contemporaneously with the completion of the transaction, Schein and Schneider each contributed $5,000 in cash to the petitioner to protect its cash position. *538 On November 1, 1934, the petitioner had a deficit in surplus of $16,179.69, and on October 31, 1936, its surplus account showed a credit of $48,583.13. The petitioner's balance sheet as of May 31, 1937, showed that the book value of the 634 shares of stock was $102,504.65. The balance sheet contained no item of good will or similar asset. No cash dividends were paid on the petitioner's stock from December 26, 1928 to July 1937. In its income and excess profits tax return for the fiscal year ending October 31, 1937, the petitioner deducted, as an ordinary and necessary expense, the sum of $31,473.40, representing the entire amount required to be paid by it to Lazarus and Fine over the 5-year period, as provided in the contracts of July 26, 1937, but discounted to their cash value. The respondent disallowed the deduction, with the following explanation contained in the statement annexed to his notice of deficiency: It is held that no deduction is allowable in respect of any liability arising from the execution by you or on behalf of certain contracts dated July 26, 1937, and referred to as "employment contracts", the other parties thereto being Moritz Lazarus and Nathan I. Fine. *539 The position is maintained that the "employment contracts" were one of the considerations for the cancellation of 634 shares of common stock turned in by Moritz Lazarus and Nathan I. Fine and cancelled by you in partial liquidation, and not in fact contracts of employment. It is also held that no part of the amounts payable in the fiscal year ended October 31, 1937, under the so-called "employment contracts" was incurred as a reasonable allowance for salaries or other compensation for personal services actually rendered by Moritz Lazarus and Nathan I. Fine within the intendment of Section 23 (a) of the Revenue Act of 1936. Your contentions that the amount of $31,473.40 should be allowed as an ordinary and necessary business expense are therefore denied. Opinion VAN FOSSAN, Judge: We have before us the familiar situation in which the owners and operators of a business, carried on either individually or by means of a corporation, have come to a sharp and irreparable disagreement. We need not discuss the occurrences leading up to the final action as described in the record. The actual transaction is the only event ultimately important. After offers and counter-offers had been made *540 and rejected by the stockholders of the petitioner, the agreement of July 26, 1937, was executed. Under it Lazarus and Fine agreed to sell their 634 shares of the petitioner's stock to Schein and Schneider for $44,000 in cash and 600 shares of the petitioner's preferred stock, nominally worth $60,000. The sale, however, was conditioned upon the cancellation of the employment contract of December 26, 1928 shared by all stockholders, and the execution of a new contract. Also called an "employment contract" in its stead. We look to this second contract for the precise consideration paid for the cancellation of the original contract. The latter contract was the final agreement entered into by the petitioner and its former stockholder-employees. Its descriptive terms are not the same as those set forth in the settlement agreement between the younger and older stockholders. As recited in that agreement, the sum of $300 per month was to be paid "in consideration of the right reserved by the corporation to call upon * * * [the elder stockholders] * * * for counsel and advice." The July 26, 1937, "Employment" agreement states that "in consideration of the foregoing termination and annulment *541 of said earlier agreement, first party shall pay to second party the sum of $12,000 in installments following * * *". The agreement then provides that such stockholders shall continue in the petitioner's employ for five years and that the petitioner "shall, on the 25th day of each of the 60 consecutive months commencing August 25, 1937, pay to second party the sum of $100 per month compensation." Second party was "subject to call for counsel and advice". No regular services were contemplated. We are of the opinion that the contract of July 26, 1937 reflects accurately the final understanding and agreement concluded among Lazarus, Fine, Schein and Schneider and the petitioner corporation. The contract is not ambiguous. It states with precision that the petitioner will pay an aggregate of $12,000 to each retiring stockholder in consideration of the termination and annulment of his previous employment contract. In so far as the petitioner and its rights to deduct payments of this character are concerned, that commitment of the petitioner is primarily important. The petitioner was undertaking to eliminate from its management and employment the persons who were disrupting its business. *542 That was the main purpose of the entire transaction. In order to accomplish that purpose, two things had to be done: (1) the younger stockholders had to purchase the stock of the elder stockholders, and (2) the petitioner had to "buy off" the rights of the latter under the continuing contracts of December 26, 1928. These actions were embodied in separate and independent, yet collateral and interdependent, contracts. Each was to be executed only upon the simultaneous execution of the other. Each had its own terms and considerations specifically and accurately expressed. Under circumstances very similar to, and like in principal with the case at bar, the courts and the Board of Tax Appeals have allowed the deduction of sums spent to preserve, protect and promote the taxpayer's business, as ordinary and necessary expenses of carrying on that business. Kornhauser v. United States, 276 U.S. 145, 72 L. Ed. 505, 48 S. Ct. 219; Charles F. Mosser, 27 B.T.A. 513; Olinger Mortuary Association, 23 B.T.A. 1282; A. King Aitkin, 12 B.T.A. 692; cf. Walter E. Kramer, Executor, 27 B.T.A. 1043. *543 See First National Bank of Skowhegan, 35 B.T.A. 876, and cases there cited. In our opinion the deduction claimed is allowable in part. Under the terms of the contract, the entire amount does not become due and payable in 1937 but only such installments thereof as are payable within that year at the rate of $200 per month to each. The petitioner is on the accrual basis. Therefore, it may accrue as liabilities and hence may deduct, the monthly installments which fall due in 1937. The additional payment of $100 per month, as provided in paragraph 3(b) of the employment contract of July 26, 1937, is clearly designated as compensation. This meant compensation for services. The statute allows a deduction for "salaries or other compensation for personal services actually rendered." No services were actually rendered pursuant to the contract provisions. Therefore, no deduction is allowable on this account.