**BROWN PRINTING COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 16982.

United States Court of Appeals
Fifth Circuit.

May 16, 1958.

William S. Duke, Jack Crenshaw, Montgomery, Ala., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., I. Henry Kutz, Atty., Marvin W. Weinstein, Atty., Morton K. Rothschild, Atty., Nelson P. Rose, Chief Counsel, Int. Rev. Ser., Rollin H. Transue, Sp. Atty., Washington, D. C., for respondent.

Before TUTTLE, BROWN and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This petition for review of a decision of the Tax Court challenges the disallowance of part of the sums deducted by the taxpayer as rent paid to a trustee landlord under a lease executed between the parties who admittedly did not deal at arm's length.

The lease in question was entered into in 1949, as a ten year extension of the original four year lease made in 1945 to run from May 1, 1945. The stock of petitioner was owned by trustees who also owned the building in question. Taxpayer states in its brief: "Petitioner has always admitted that these two parties could not deal at arm's length in the making of the lease." The lease provided for payment of a minimum monthly rent of $400 towards 4% of gross receipts. For the years 1952 and 1953, the two tax years in question, petitioner deducted as rent $22,401.62 and $15,814.65 respectively. The Commissioner disallowed all amounts over $10,609.03 per year. The Tax Court raised this figure to $12,325, which it found to be a reasonable rent for the years in question.

The applicable statute is Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A):

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

[As amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798]

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

█ We have held that "rentals. or other payments for the use of property which are excessive in amount, taking into consideration all the facts of the particular case, do not constitute ordinary and necessary business expenses, or payments required to be made as a condition to the continued use of the property." Limericks, Inc., v. Commissioner, 5 Cir., 165 F.2d 483, 484. See also Hightower v. Commissioner, 5 Cir., 187 F.2d 535.

█ █ It is entirely appropriate, therefore, for the Commissioner to inquire into payments in the nature of rent and disallow such part as may be excessive in amount, and if such determination of disallowance is soundly based, his action carries with it a presumption of correctness. Furthermore, while the actual contract made between parties dealing fully at arm's length is usually persuasive of its reasonableness, no such inference can arise from the execution of a contract between persons having an interest on both sides of a transaction.

Here, recognizing as they did, the vulnerability of a rental figure from the

standpoint of deductibility, that would not in fact be fair, the parties undertook to obtain expert real estate advice on this point. The real estate department of the First National Bank suggested the rental of 4% of gross receipts, with a $4800 annual minimum. The persons who suggested this figure were not called as witnesses, and the record does not show what factors they considered in making this suggestion.

The record does not disclose what the annual receipts of petitioner were in 1944 and prior years, and thus it is impossible to ascertain what annual rent they might have expected would result from a 4% lease. It is shown that in 1945, the year before the lease was first executed, but which became the first year of the term 4% produced rent of $7,000; in 1948, the last year of the original lease, the rent came to $15,400; this was the last year's experience when in 1949 the term was extended for an additional 10 years.

Petitioner's witnesses testified that, viewed as of the time that the lease was made, it was a reasonable lease, pointing out, among other things, that if it produced a big return in a year of large income, this might be averaged at a lower figure by small returns in years of small gross income; one witness testified that the guaranteed minimum was, in his opinion, too low, and would permit the possibility of too small a rental in poor years. Petitioner's witnesses also testified as to the reasonableness of the rent received in 1952 and 1953 separately. There was some variation on this point, but the lowest figure testified to by petitioner's witnesses was some $18,500, and the highest was $22,500.

The Government tendered one expert witness who did not undertake to express an opinion on the reasonableness of the lease as a whole, but who gave as his opinion that a reasonable annual rental would be $6,600 in 1952 and 1953.

The Tax Court made no findings as to the reasonableness of the lease as a whole, but did find that all amounts in excess of $12,325.00 per year for 1952 and 1953 were excessive.

Petitioner strongly insists here that it is relatively unimportant what 4% gross receipts actually produced in these two years in the middle of a ten year lease, if in fact the parties can be said to have made a reasonable bargain in 1949 when the lease was made. In view of the fact that the rental guaranteed here was only $4800 per annum, whereas the Tax Court found that $12,325 was reasonable in 1952 and 1953, it is quite apparent that it would have been mathematically possible for the rent in those years under this lease to have been much less than a reasonable rent. Likewise the rent for any one year could be less than the amount found by the court to be reasonable.

█ As it was possible under any ten year percentage lease for the landlord to get *less* than a fair rent in poor years, thus it is reasonable to assume that an ordinarily prudent lessor would insist on a percentage figure that would likely yield him *more* than a reasonable rent in good years. We do not think this would require the disallowance of such excess over the reasonable figure for any particular year or years. It is significant that the rent computed at 4% produced only $7,000 the first year of the original lease; to be sure, this had gone up to $15,400 for the year before the new one was negotiated. We are not told what the experience was for 1946 or 1947. Those years, together with 1945 at $7,000 and 1948 at $15,400, represented the history which would normally be in the minds of the parties where they came to fix the terms for the next ten years. Perhaps the experience was such and prospects were so good that any ordinarily prudent man would know that in all likelihood the experience over the succeeding ten years would produce rents *averaging* well over a reasonable figure for the period. The Tax Court, however, did not ascertain the truth of that mat-

ter. It directed its attention to the reasonableness of the rents received in two years only. This, we think, is not the question it had to resolve. It should instead have ascertained what would be a reasonable lease for the entire period. If in fact all the evidence adduced on the subject would cause the court to hold that, viewed as of May, 1949, this was a reasonable lease, then it would be entirely immaterial if, fortuitously all went beyond the fondest expectations of the parties in 1949, and in 1952 and 1953 the 4% factor produced rent all out of proportion to what would be considered reasonable for a single year's rental viewed separately.

We are cited to no case in which this precise question has been settled by the Tax Court or the appellate courts. However, unless we are prepared to say that no percentage lease that may fluctuate above and below a reasonable figure during its terms can be valid as between persons not dealing at arm's length, which we are not, the logic of the matter is clear. If, viewing the circumstances in which the lease is made, it is such a lease as reasonable men dealing at arm's length would make, then it is valid and binding as to each year even for tax purposes when entered into by related parties.

We find that there is ample evidence in the record to support a finding by the Tax Court that this lease, or some slightly modified version of it, is reasonable in its terms. There is no specific evidence that it is unreasonable. However, there is also sufficient factual evidence which, with proof of the rent received in 1946 and 1947 and subsequent years not testified to, might warrant the Tax Court in finding that a reasonable lease would require a smaller percentage of gross receipts. In view of the fact that the Tax Court did not direct its inquiry to the issue here discussed, we conclude that the decision must be set aside and the case remanded to permit the parties to offer such additional proof as they may be advised on this central issue and for the Tax Court to make its finding on this issue.

Decision reversed and case remanded for further proceedings consistent with this opinion.