POTTER ELECTRIC SIGNAL AND
MANUFACTURING COMPANY,
a corporation, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 16579.

United States Court of Appeals
Eighth Circuit.

Jan. 23, 1961.

Selden Blumenfeld, St. Louis, Mo., made argument for petitioner and Tennie C. Leonard, Memphis, Tenn., was with him on the brief.

Louise Foster, Atty., Tax Division, Dept. of Justice, Washington, D. C. made argument for respondent. Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Michael I. Smith, Attys., Tax Division, Dept. of Justice, Washington, D. C. were with her on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

VOGEL, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court redetermining deficiencies in its income taxes for the years 1950, 1951 and 1952. The court disallowed part of the sums deducted as rent,

paid to a trustee landlord, on the grounds that such rent was not required to be paid within the meaning of § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A., which provides:

"§ *23. Deductions from gross income.* In computing net income there shall be allowed as deductions: (As amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798, 819.)

"(a) *Expenses.*

"(1) *Trade or business expenses.*

"(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; *and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.*" (Emphasis supplied.)

Petitioner was in the business of installing, maintaining and servicing alarm systems using electronic devices connected by wires to a central station which it operated. It was incorporated in March, 1916, with an original authorized capital of $150,000 consisting of 1,000 shares of common and 500 shares of preferred stock. Of these shares, only 559 of common and 365 of preferred were issued. Until 1948 Charles E. Potter, petitioner's founder and president, owned all of the common and 300 shares of the preferred. In July, 1948, Potter transferred his stock to a revocable trust with himself and one M. E. Turner as trustees, to be administered as two separate trusts, each comprised of one-half of the stock. The first trust provided that Potter should be life beneficiary and at his death his wife, Ida L. Potter, to be life beneficiary with power of appointment as to the remainder. In the second trust Potter was life beneficiary with income after his death to be distributed at the trustees' discretion to Mrs. Potter or Potter's daughter or her children and with the remainder ultimately to go to the daughter's children. Upon Potter's death in October, 1948, his widow and the Guaranty Trust Company of Missouri succeeded him as trustees. On June 5, 1951, Ida L. Potter resigned as co-trustee and was succeeded by Rita Potter Trigg, Potter's daughter. Since Turner's death in January, 1952, the Guaranty Trust Company and Rita Potter Trigg have been sole trustees.

Since before 1936 petitioner's business was located in the Century Building on Ninth Street in downtown St. Louis. Due to various factors, including disagreements with the lessor and its inability to conduct full manufacturing operations in the premises, petitioner in 1946 began a search for new quarters. The exigencies of its business required that the new location should be near a telephone exchange, close to the ground, near its customers and with adequate parking facilities. A building located at 1211–13 Pine Street in St. Louis, owned by an investment company in the process of liquidation, was found suitable, but the property was not available for leasing. Considering itself unable to purchase the property, petitioner obtained the Potter Trust's agreement to purchase the premises, which it did for a price of $75,000.00 on December 27, 1948. The trust borrowed the entire amount, $50,000 of which was secured by a deed of trust on the property and $25,000 secured by other property of the trust. This property was originally purchased by the investment company in 1930 at a price of $200,479.50. On the same day that the trust purchased the property for $75,000 it entered into a 20-year lease agreement with petitioner which provided for the following rentals: $850 per month for the first five years; $1,000 per month for the second five years; $1,500 per month for the third five years; and $2,000 per month for the final five

years, plus 15% of petitioner's net profits before taxes for all years. Petitioner also agreed to pay taxes, cost of insurance and upkeep and to make all necessary repairs and improvements to the building. The previous tenants had paid a total of $4,800 per year, only one of the occupants was required to pay taxes thereon, and neither made any improvements.

The respondent determined that the petitioner was "required" to pay only $7,500 per year as rent, plus taxes, repairs and insurance. The effect of his holding was to disallow a portion of the basic rent for each of the years in question and all of the amounts claimed by petitioner under the percentage of profits provision of the lease. The Tax Court, after finding that a close relationship existed between the parties and concluding that they had not dealt on the basis of an arm's length transaction in entering into the lease, held the respondent's finding as to rent to be inadequate, and that $10,200 represented a reasonable yearly rental during the period involved and that all payments in excess thereof plus taxes, insurance and upkeep [1] were not required to be paid under the statute.

■■ The issue in this case is whether or not the alleged rentals, deducted as such, were "required" to be paid by petitioner " * * * as a condition to the continued use or possession * * * " of the Pine Street property. Section 23 (A), supra. In other words, were they actual rental payments or did they represent something else? If they were not wholly rental payments, then the excess was not deductible by the petitioner as such. This presented a question of fact. As stated in Utter-McKinley Mortuaries

v. C. I. R., 9 Cir., 1955, 225 F.2d 870, at page 874:

"The burden imposed by the statute to permit deductions for rentals is onerous. Taxpayer must have proved to the trial court that the payments were wrung from it by compulsion of circumstances delineated by law. *The question whether surrounding conditions drove taxpayer through this narrow gate was surely one of fact.*" (Emphasis supplied.)

In Limericks, Inc. v. C.I.R., 5 Cir., 1948, 165 F.2d 483, the question was whether certain rental payments by a corporation to its president and principal stockholder constituted in reality a distribution of profits.[2] There the court stated:

"The Tax Court was not bound to accept the form of this transaction between a corporation and its principal stockholder at face value, but was required to make a careful scrutiny to determine how much of the amount, if any, was actually dividends distributed in the guise of rent. The statute does not permit the deduction of an amount which is in no sense a legitimate business expense. *The substance of the transaction is for the Tax Court to determine upon the appraisal of all the facts, and its decision must be sustained if there is a rational basis for its conclusion.*" (Emphasis supplied.) 165 F.2d at page 484.

In resolving the fact question as to whether or not the amounts paid were "required" as rent for the use of the property, we note that there is no express limitation as to reasonableness of rental deductions to be found in the stat-

---

1. For the years involved, petitioner paid the following amounts for taxes, repairs and insurance: In 1950, $2,970.94; in 1951, $3,034.78; in 1952, $2,693.71. Fifteen per cent of net profits amounted to $3,104.15 in 1950, $10,461.74 in 1951, and $15,955.00 in 1952. Improvements made by petitioner totalled $44,807.09 by the end of 1952.

2. In the instant case the petitioner had accrued $5,642.29 due the Potter Trust under the percentage of profits provision of the lease for the year 1949. Significantly, no part of this amount, nor of the amounts accrued under the percentage provision for the years 1950 and 1951 and part of 1952, was paid until March, 1952.

ute such as there is insofar as "salaries or other compensation for personal services actually rendered" are concerned. However, the general rule with reference thereto appears to be well stated by the Tax Court in Roland P. Place, 1951, 17 T.C. 199, 203, affirmed, 6 Cir., 199 F.2d 373, certiorari denied, 344 U.S. 927, 73 S. St. 496, 97 L.Ed. 714.

"The basic question is not whether these sums claimed as a rental deduction were reasonable in amount but rather whether they were in fact rent instead of something else paid under the guise of rent. The inquiry is whether the petitioner was in fact and at law 'required' to pay these sums as rent. See section 23(a) (1) (A) of the Internal Revenue Code. *When there is a close relationship between lessor and lessee and in addition there is no arm's length dealing between them, an inquiry into what constitutes reasonable rental is necessary to determine whether the sum paid is in excess of what the lessee would have been required to pay had he dealt at arm's length with a stranger.* Manos v. Commissioner [6 Cir.], 187 F.2d 734; Stanwick's, Inc., 15 T.C. 556, affd. (C.A. 4), June 25, 1951; Limerick's, Inc., 7 T.C. 1129, affd. [5 Cir.], 165 F.2d 483; Hightower v. Commissioner [5 Cir.], 187 F.2d 535. See Commissioner v. Lincoln Electric Co. [6 Cir.], 176 F.2d 815." (Emphasis supplied.)

Clearly, then, the reasonableness of the rentals becomes important if, but only if, the evidence shows that there existed a close relationship between the parties and that they did not deal at arm's length. The record with reference thereto indicates as follows:

■ The Potter Trust owned all of the outstanding common stock and 300 of the 365 shares of petitioner's outstanding preferred stock. At the time the lease was entered into, M. E. Turner, as one of the three trustees, signed the lease on behalf of the trust; as one of petitioner's three directors he also approved the lease on petitioner's behalf. (This factor alone distinguishes the cases relied upon by petitioner and subsequently referred to herein.) W. T. Mc-Cane, whose wife was a possible beneficiary of the trust, signed the lease for petitioner as its president, was one of its three directors and a son-in-law of Ida L. Potter. Ida L. Potter was one of the three trustees of the Potter Trust, a beneficiary thereof and also petitioner's treasurer. It is true enough that Mc-Cane reported at a directors meeting that his mother-in-law, Ida L. Potter, who apparently did not attend the meeting, was opposed to the leasing of the building and against the trust buying it. If she was so opposed, however, there is no evidence giving the reasons for her opposition. See Potter v. Winter, Mo., 1955, 280 S.W.2d 27.

On the basis of this record, the Tax Court held:

"In the light of the close relationship which existed between petitioner and the Charles E. Potter Trust, however, we can find no support for the contention that the lease was entered into in an arm's length transaction. On the contrary, considering all the circumstances, we are convinced the lease was not the result of arm's length negotiations and so hold."

It cannot be said that such conclusion is clearly erroneous or against the clear weight of the evidence. Certainly the close relationship between the trustees and the directors and officers of Potter Electric Company, plus the tremendous increase in agreed rentals and profits, justify, if they do not force, the conclusion that the parties were not at all dealing at arm's length. The Tax Court in so finding must be sustained.

■ Passing now to the question of reasonableness of the rentals, we have recently held that this, too, constitutes a question of fact. Midland Ford Tractor Co. v. C. I. R., 8 Cir., 1960, 277 F.2d 111, certiorari denied, 1960, 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 102. At page 114 of 277 F.2d we stated:

"It was the function of the Tax Court to determine as a fact what was a reasonable rental to be paid by petitioner. This the Tax Court has done and its finding is presumptively correct and should not be set aside unless clearly erroneous."

■■ This comports with the many cases holding that what constitutes " * * * a reasonable allowance for salaries * * *", § 23(a) (1) (A), supra, is essentially a fact question to be resolved by the Tax Court. Hoffman Radio Corp. v. C. I. R., 9 Cir., 1949, 177 F.2d 264; Gem Jewelry Co. v. C.I.R., 5 Cir., 1948, 165 F.2d 991, certiorari denied, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770; Ecco High Frequency Corp. v. C. I.R., 2 Cir., 1948, 167 F.2d 583, certiorari denied, 335 U.S. 825, 69 S.Ct. 49, 93 L.Ed. 379. Here the Tax Court's finding that rentals in excess of $10,200 plus insurance, taxes and upkeep were not reasonable was based upon the prior rental history of the Pine Street property, as compared to the Century property,[3] the fact that under the percentage of net profits provision the entire purchase price of $75,000 would be paid off in less than four years, and that improvements made by petitioner at its own expense totalled $44,807.09 by the end of 1952. As to petitioner's contention that the rentals were not unreasonable when compared with the space and rentals of the Century Building, the Tax Court notes that petitioner failed to offer competent testimony of any disinterested witness as to rentals for comparable properties. In this connection it is pointed out by the court that while the Century Building was located in a highly concentrated commercial and shopping area, the Pine Street property was located outside of such area. Respondent's expert witness testified that most owners of business property would be satisfied with a rental return equivalent to 10% of the property's cost.

We have carefully examined the Tax Court's decision and are of the opinion that the evidence abundantly sustained the court's conclusion.

Petitioner relies on the cases of Brown v. Commissioner, 3 Cir., 1950, 180 F.2d 926, certiorari denied, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598; Skemp v. Commissioner, 7 Cir., 1948, 168 F.2d 598; Consolidated Apparel Co. v. Commissioner, 7 Cir., 1953, 207 F.2d 580; and Brown Printing Co. v. Commissioner, 5 Cir., 1958, 255 F.2d 436, for the proposition that the rentals were required to be made as a condition to the continued use and possession of the Pine Street property. Each of the cited cases, however, is distinguishable on its facts.

In Brown, taxpayers, partners in the general contracting and coal mining business, had conveyed certain mining property to an individual trustee who was in no way connected with the partnership. The property was then leased back to taxpayers "upon what was found by the Tax Court to be reasonable rents and royalties." In allowing the deduction of the rentals so paid, the court relied upon the fact that the trustee was in no way connected with the partnership. In Skemp, taxpayer, a doctor, conveyed his office building to a trust company, reserving the right to rent all or a part of the building at a rental to be determined by the trustee. In allowing the deduction of the rentals, the court noted that taxpayer was in no way connected with the trust company as stockholder, officer or employee.

In Consolidated a trust established by a majority stockholder of taxpayer-corporation purchased certain property and then leased it to taxpayer. Finding that

3. The following rentals were paid by the petitioner for the Century Building space: $262.50 per month, January 1943 to June 1943; $280.00 during July 1943; $297.50 per month from August 1943 to September 1946; and $612.00 per month from September 1946 to September 1949. Petitioner had 5,265 square feet of space in the Century Building and 11,297 square feet of space in the Pine Street Building.

the rental payments were deductible, the court stated:

> "On one side was an independent trustee, subject to no one's control, who was authorized to act at his own discretion." 207 F.2d at page 584.

In the latter case there was also undisputed evidence as to the reasonableness of the rentals by competent expert witnesses. In the instant case, however, petitioner did not offer the testimony of any competent and disinterested witness as to the reasonable rental value of the Pine Street property.

Finally, in Brown Printing Company, the transaction involved rentals paid by taxpayer-corporation to trustees who owned taxpayer's stock and also owned the leased premises. The Tax Court made no findings as to the reasonableness of the lease as a whole, but concerned itself only with a portion of it. This was held to be error, since the court should have ascertained what a reasonable rental for the entire period would have been, and the case was reversed and remanded on this ground alone. In the course of its opinion, the court stated:

> "If, viewing the circumstances in which the lease is made, it is such a lease as reasonable men dealing at arm's length would make, then it is valid and binding as to each year even for tax purposes when entered into by related parties." 255 F.2d at page 440.

The court pointed out, however, that:

> " * * * 'rentals * * * which are excessive in amount, *taking into consideration all the facts of the particular case,* do not constitute ordinary and necessary business expenses, * * *.' " (Emphasis supplied.) 255 F.2d at page 438.
>
> " * * * while the actual contract made between parties dealing fully at arm's length is usually persuasive of its reasonableness, no such inference can arise from the execution of a contract between persons having an interest on both sides

of a transaction." 255 F.2d at page 438.

Cf. Baltimore Steam Packet Co. v. United States, Ct.Cl.1960, 180 F.Supp. 347.

Affirmed.