CLYDE M. HYDE, JR. and EMMA R. HYDE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. GAY 90'S, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Hyde v. Commissioner
Docket Nos. 249-72, 3300-72
United States Tax Court
T.C. Memo 1974-103; 1974 Tax Ct. Memo LEXIS 217; 33 T.C.M. (CCH) 502; T.C.M. (RIA) 74103; April 24, 1974, Filed. *217 Held: Upon consideration of all the facts and circumstances presented, that the rental payments made by the petitioner Gay 90's, Inc., to Arlington, Inc., during the fiscal years ended in 1968 and 1969, were reasonable and constituted ordinary and necessary business expenses deductible under the provisions of section 162, I.R.C. 1954. Clyde *218 M. Hyde, Jr., pro se. A. A. Simpson, Jr., for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in the income tax of the petitioners for the years and in the amounts as follows: Docket Number
Petitioner
Year Ending
Deficiency 249-72
Clyde M. Hyde, Jr., and Emma R. Hyde
12/31/67
$811.20
12/31/68
1,711.04
3300-72
Gay 90's, Inc.
3/31/68
1,200.50
3/31/69
1,731.67
The principal issues are: (1) Whether rental payments made by the petitioner Gay 90's, Inc., to the extent they exceeded $6,000 in each of its fiscal years involved, were ordinary and necessary business expenses under the provisions of section 162 of the Internal Revenue Code of 1954; [1] and if not (2) whether, to the extent such payments exceeded $500 per month, they constituted constructive dividends taxable to the petitioners Clyde M. and Emma R. Hyde. Two additional issues involving medical expense deductions claimed by the Hydes for 1967 and 1968, and a net operating loss deduction *219 claimed by the petitioner Gay 90's, Inc. for the year ending March 31, 1969, will depend upon the determination of the two principal issues. Gay 90's, Inc., has conceded it is not entitled to a bad debt loss deduction for the year ended March 31, 1969. The cases were consolidated for trial. FINDINGS OF FACT Clyde M. and Emma R. Hyde are husband and wife and at the time their petition herein was filed they were residents of Shreveport, Louisiana. They filed joint Federal income tax returns for calendar years 1967 and 1968 with the Internal Revenue Service Center in Austin, Texas. Gay 90's, Inc. (hereinafter referred to as Gay 90's) is a Louisiana corporation which was engaged in the operation of a night club located at 716 Louisiana Avenue, Shreveport, Louisiana. It filed corporate income tax returns for the fiscal years ending March 31, 1968, and March 31, 1969, with the Internal Revenue Service Center in Austin, Texas. Arlington, Inc. (hereinafter referred to as Arlington) is a Louisiana corporation which is the assignee of a 99-year lease on a three-story brick building known as the Arlington Hotel located at the corner of Cotton Street and Louisiana Avenue, Shreveport, *220 Louisiana. Arlington filed corporate income tax returns for fiscal years ending March 31, 1968 and 1969 with the Internal Revenue Service Center in Austin, Texas. Arlington is not a party to this litigation. As near as we can ascertain from the very meager evidence gleaned piece-meal from stipulated but uncorroborated exhibits, and the inadequate and inconclusive testimony of the witnesses, the Arlington Hotel building has been operated as a hotel for many years, at least since 1937 when it was leased by William Comegys, Jr. to a Mr. Culpepper under a 99-year term lease for $250.00 per month. Culpepper sold the lease to a Mr. Carson and a Mr. Harold, who converted a portion of the building into a cocktail lounge called the Gay 90's. They installed a large outdoor advertising sign, purchased a bar "with 2130 silver dollars," and also a piano bar, and generally remodeled an area of approximately 1900 square feet. This conversion presumably took place in 1958, when the "Gay 90's" advertising sign, a 30-foot high porcellanized neon sign, was purchased at a cost of approximately $10,000. Carson and Harold later sold their interest in the property to E. J. Amadio, the date of sale *221 not being shown. Arlington, Inc. and Gay 90's, Inc. were both incorporated on March 22, 1965. E. J. Amadio received 96 of the 100 outstanding shares in Arlington, and William J. Sneed received 66 of the 100 outstanding shares of stock in Gay 90's. The remaining 34 shares of Gay 90's stock were owned by Harry P. Cole, T. S. Harmon and J. R. Harris. Upon incorporation, Arlington received fixed assets with an adjusted basis of $38,037.35, and Gay 90's received fixed assets with an adjusted basis of $18,783.95. For all practical purposes, Arlington, as assignee of the 99-year term lease, was the owner of the real property, including the entire hotel building and leasehold improvements, and the large outside neon sign. Gay 90's was the owner of the movable fixtures and equipment used in the operation of the cocktail lounge, and was the sublessee of a substantial portion of the first floor of the hotel building. In addition to the space leased to Gay 90's, Arlington also rented space on the first floor to other businesses. An area 30 by 35 feet was rented at $150 per month for the operation of a restaurant, and an area 15 by 35 feet was rented to an elderly barber, for $90 *222 decreasing to $70 per month, for the operation of a barber shop. It was apparently unable to rent certain other store spaces available on the first floor. The second and third floors of the Arlington Hotel building were operated by Arlington as a hotel for both transient and residential occupants. On May 20, 1965, Arlington and Gay 90's entered into a five-year lease whereby Gay 90's subleased approximately 1813.5 square feet of the first floor of the Arlington Hotel building, for which it agreed to pay Arlington $350.00 per month plus certain percentages of gross sales over stated amounts. In July 1966, Clyde and Emma Hyde purchased all of the outstanding stock of both Arlington and Gay 90's. Clyde became the president of both corporations. Clyde was primarily interested in the operation of the Gay 90's and bought the stock in both corporations only because the then owner would not sell the one without the other. In doing so, he took into consideration the fact that the Arlington Hotel was old and outdated and that its income was considerably less than its expenses. He also took into consideration the fact that both corporations had been operating at losses. As of March 31, 1966, the *223 end of the preceding fiscal year, Arlington had a net operating loss carryover in the amount of $4,032.25, and Gay 90's had a net operating loss carryover in the amount of $5,532.54. Clyde attributed the losses to the inexperience of the former owners, particularly in the operation of a cocktail lounge or night club. He concluded that Arlington would have to receive at least $12,000 a year in rent from Gay 90's in order for it to break even. He also concluded, however, from studies and projections he had made, that Gay 90's could be operated so as to enable it to pay this amount of rent and also realize a profit. In August, 1966, the space occupied by Gay 90's was enlarged to include an adjoining vacant store, thereby adding approximately 532 square feet and increasing the floor space occupied by Gay 90's to approximately 2,345 square feet. The dividing wall was removed and certain leasehold improvements were also made by both Arlington and Gay 90's. On December 1, 1966, Arlington and Gay 90's entered into a new lease whereby the monthly rent to be paid to Arlington by Gay 90's was increased to $1,000. The rent paid to Arlington by Gay 90's during the fiscal years ending *224 in 1968 and 1969 was included in the gross income reported by Arlington on its income tax returns for those years, and was claimed by Gay 90's as business deductions on the income tax returns filed by it for the same years. On September 20, 1970, Gay 90's entered into a lease agreement with William T. Martin whereby it subleased and rented the Gay 90's lounge together with all its furniture, fixtures and equipment, consisting of 62 specific items, to Martin for a period of one year beginning October 1st, 1970, and ending September 30, 1971, and for a monthly rental in the amount of $1,500. On June 1, 1971, Gay 90's entered into another lease agreement whereby it subleased and rented the Gay 90's lounge together with all its movable equipment to Ronnie Spencer for a period of two years beginning October 1, 1971, and for a monthly rental of $1,500. In his notices of deficiencies, respondent determined that to the extent they exceeded $6,000, the rental payments made by Gay 90's to Arlington in each of the fiscal years ending in 1968 and 1969, were not deductible because not shown to have been ordinary and necessary business expense. He further determined that $4,500 of such *225 excessive rentals in 1967 and $6,000 in 1968, was dividend income, as defined by section 316, constructively received by the petitioners Clyde and Emma Hyde as the sole stockholders of Gay 90's, and includible in their gross income under section 301. In addition, respondent determined that $6,000 of the rental payments made by Gay 90's to Arlington in each of the years 1968 and 1969, was a contribution of capital to Arlington because it had not been shown that a debtor-creditor relationship existed between Gay 90's and Arlington. OPINION The principal question to be determined is whether the petitioner Gay 90's is entitled to deduct rental payments in excess of $6,000 ($500 per month) which it paid to Arlington during each of the fiscal years ended in 1968 and 1969. Section 162(a) (3) provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including - (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. *226 Section 162 does not specifically limit deductions for rental payments to "a reasonable allowance," as in the case of salary or compensation. It has generally been held, however, that when there is a close relationship between the parties and in addition there is no arm's-length dealing between them "an inquiry into what constitutes reasonable rental is necessary to determine whether the sum is in excess of what the lessee would have been required to pay had he dealt at arm's-length with a stranger." Roland P. Place, 17 T.C. 199, 203 (1951), affd. 199 F.2d 373 (C.A. 6, 1952), certiorari denied 344 U.S. 927; Potter Electric Signal and Manufacturing Co. v. Commissioner, 286 F.2d 200 (C.A. 8, 1961), affirming a Memorandum Opinion of this Court; Sparks Nugget, Inc. v. Commissioner, 458 F.2d 631 (C.A. 9, 1972), affirming a Memorandum Opinion of this Court, certiorari denied 410 U.S. 928. In the present case, Clyde and Emma Hyde owned all of the stock of both Arlington, the lessor, and Gay 90's, the lessee, of the property in question. Clyde was the president of both corporations and as such determined *227 the amount of rent which Gay 90's should pay Arlington for the use and possession of the property, and represented both the lessor and the lessee in the execution of the new lease on December 1, 1966. It is clear, therefore, not only that there was a close relationship between the lessor and the lessee, but also that there was no arm's-length negotiation of the terms of the lease. Under such circumstances it is necessary that we determine whether the rental payments were reasonable or in excess of what the lessee Gay 90's would have been required to pay had it been dealing at arm's length with a stranger. This is a factual question, Potter Electric Signal and Manufacturing Co., supra, as to which the petitioners have the burden of proof, Rule 142 of the Tax Court Rules of Practice and Procedure.
Clyde and Emma Hyde acquired all of the stock of Arlington and Gay 90's in July, 1966. At that time, the premises used by Gay 90's for the operation of a cocktail lounge and night club were being leased by Gay 90's from Arlington under a five-year lease agreement providing for the payment of a monthly rental in the amount of $350.00, plus a stated percentage of gross sales. *228 In August, 1966, the space occupied by Gay 90's was enlarged to include an adjoining vacant store space in the Arlington Hotel building. On December 1, 1966, Arlington and Gay 90's entered into a new lease agreement providing that the monthly rental be increased to $1,000, without provisions for percentage of gross sales. Respondent contends that to the extent the rental payments exceeded $500 per month they were not reasonable and are not deductible as ordinary and necessary business expenses under section 162. In support of his contention respondent offered in evidence the testimony of Wm K. Chance, an evaluation engineer-agent employed by the Internal Revenue Service, and an appraisal report made by him dated August 7, 1972, wherein he estimated that the fair rental value of the property leased to Gay 90's during the fiscal years ended in 1968 and 1969 was $4,800 per year, based upon rentals per square foot paid by four other businesses, three of which were small businesses located in the Arlington building and the fourth was a "Bar" called the "Beachcomber," space for which was rented by the petitioner Clyde Hyde from May to December, 1968. While the rental per square foot *229 paid by other businesses may properly be considered, it does not of itself in our opinion furnish a sufficient basis for the determination of the fair rental value of the property occupied and used by the Gay 90's, including the leashold improvements and facilities which went with it, as well as a large elaborate neon sign which advertized its business. We agree with petitioner that the potential for success of the business for which the property is rented, the suitability and usefulness of the particular property for such business, as well as location, demand, and availability are factors to be considered in determining the fair and reasonable rental value of business property. Generally speaking, the rental paid by others engaged in similar businesses for comparable facilities is considered strong evidence of the fair rental value of a particular property. Unfortunately, neither party in the present case has furnished us any substantial evidence as to the rent paid by similar businesses for comparable facilities located in the Shreveport area. Petitioners offered no expert opinion testimony of their own. An appraisal report, dated July 1, 1970, made by Thomas B. Dupree, Jr. *230 , a member of a firm of real estate appraisers, allegedly upon request of petitioners, was stipulated into evidence by the parties. Although Dupree determined that the $1,000 per month then being paid by Gay 90's to Arlington was fair and reasonable, petitioners specifically disavowed the report on the ground that it was not made on information furnished by them, incorrectly stated the dimensions of the Gay 90's Club, and was not made for the purposes of the trial of this case. It is noted that the report was not made to the petitioners but was addressed to an attorney (whose connection with this case, if any, was not shown), and that it was made prior to the notices of deficiencies and prior to the investigation by respondent's agent Chance. In any event, we give no weight to this report since it appears to have been made on the basis of a publication relating to percentage leases compiled by the National Institute of Real Estate Brokers and furnished no evidence or information as to rental paid by businesses similar to that of the Gay 90's for comparable facilities, in the Shreveport area, or any other basis upon which we can determine the fair and reasonable rental value of the *231 property leased to Gay 90's. Petitioners contend that the $1,000 per month rental provided by the lease dated December 1, 1966, was not only fair and reasonable but was necessary in view of the fact that the $350 per month rental provided by the lease dated May 20, 1965, was not sufficient to pay even the ordinary expenses incurred by Arlington, such as taxes, insurance and other standard business expenses. In this connection, it is to be noted that Arlington itself was required to pay $250 per month as rent to the owner-lessor of the property under the 99-year term lease. We recognize that the true rental value of the property leased by Gay 90's is not to be determined by the income needs of the lessor Arlington. Sparks Nugget, Inc. v. Commissioner, supra. We are inclined to believe, however, that there were legitimate business reasons for the increase in rental in the present case, which distinguishes it from the Sparks Nugget case. Clyde was primarily interested only in the operation of the Gay 90's night club and bought the stock of both corporations only because the owner would not sell the one without the other. In so doing, he took into consideration *232 the fact that the Arlington Hotel was old and outdated, that its income was considerably less than its expenses, and that both corporations had been operating at losses. He concluded that Arlington would have to receive at least $12,000 a year in rent from Gay 90's in order to break even. He attributed the losses to the inexperience of the former owners, particularly in the operation of the night club, and concluded that the Gay 90's could be operated so as to enable it to pay $12,000 a year in rent and still make a profit. Thus, the increase in rent to be paid by Gay 90's was considered necessary to the acquisition and operation of the Gay 90's. Under such circumstances we think the amounts paid may reasonably by considered as rent and not something else paid under the guise of rent. Cf. J.A. Riggs Tractor Co. v. United States, (E.D. Ark., Sept. 17, 1973) 73-2 USTC P9704; 32 AFTR 2d 73-5805. It is also to be noted that in August 1966, one month after the Hydes acquired the stock of the two corporations, the space occupied and used by Gay 90's for the operation of the night club was substantially increased by the inclusion of an adjoining vacant store, *233 a part of the Arlington building. The dividing wall was removed and certain leasehold improvements were made by the parties. Finally, and even more persuasive of the reasonableness of the rental paid by Gay 90's during the taxable years in issue, is the fact that on September 20, 1970, and again on June 1 1971, Gay 90's entered into lease agreements with totally unrelated parties whereby it subleased and rented the Gay 90's lounge and night club, including the furniture, fixtures and movable equipment which it owned, for a monthly rental of $1,500. We are satisfied from our examination of the detailed schedule of the personal property and other factors that the fair rental value of the personal property did not exceed $500 and that at least $1,000 of the above amount was intended as rental for the lease-hold interest. Upon consideration of all the facts and circumstances presented and for the reasons hereinabove discussed, we hold that the rental payments made by the petitioner Gay 90's, Inc., to Arlington, Inc., during the fiscal years ended in 1968 and 1969 were reasonable and constituted ordinary and necessary business expenses deductible under the provisions of section *234 162. Our decision on this issue makes unnecessary any consideration of the second issue. In order that effect may be given to the concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise noted. ↩